## Appeal of PROVIDENCE MILL SUPPLY CO.

Docket No. 3261. Submitted July 3, 1925. Decided October 5, 1925.

1. Personal qualifications or characteristics of an individual do not constitute good will.

2. No evidence adduced which would bring the taxpayer within the terms of section 327, Revenue Act of 1918, so as to entitle it to special assessment under section 328.

*William A. Needham, Esq.*, for the taxpayer.
*Robert A. Littleton, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, GREEN, and LOVE.

The Commissioner determined a deficiency in income and profits taxes of $1,596.95 for 1919 and $1,076.26 for 1920. The taxpayer alleges errors (1) in not allowing in invested capital an amount for good will equal to 25 per cent of the par value of the total outstanding capital stock of the taxpayer and of its affiliated company, the Narragansett Belting Co., and (2) in not computing the tax under sections 327 and 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The taxpayer is a Rhode Island corporation organized in 1907, and has its principal office in the City of Providence. It has an authorized capital stock of $100,000, consisting of 1,000 shares of the par value of $100 each.

The taxpayer owns all of the capital stock of the Narragansett Belting Co., which was incorporated in 1910 under the laws of Rhode Island, with an authorized capital stock of $90,000, consisting of 900 shares of the par value of $100 each.

The taxpayer was formed by Wilfred C. Murphy. At the time of organization there was paid in in cash $1,815, of which $1,190 was contributed by Murphy, $500 by George C. Ball, and $125 by a man named Marble. For this cash the corporation issued 510 shares, amounting to $51,000 par value, which were divided equally among the persons named. For his 170 shares Marble gave, in addition to $125, a promissory note, the amount of which does not appear in the evidence. The note was afterwards canceled, and Marble turned in to the treasury of the corporation 152 shares and retained 18 shares. The corporation subsequently, from time to time, sold this treasury stock and the balance of the unissued shares, so that in the years 1919 and 1920, the total capital stock outstanding was $100,000 par value. Most of this stock was purchased by Murphy, at prices ranging from $5 to $90 per share. The average was about $15.

When the Narragansett Co. was organized there was paid in by the Providence Co. and Murphy and four other persons a total of

$4,500. For this investment the entire authorized capital stock of 900 shares of $90,000 par value was issued to the Providence Co.

The taxpayer was in the business of selling leather belting to cotton factories and woolen factories for use in connection with looms, spinning frames, and card machines. Prior to 1910 it received a stock of belting worth $10,000, on consignment from a large concern by which Marble was employed. In 1910 the Narragansett Co. was organized for the purpose of manufacturing belting to be sold by the taxpayer. It buys the leather from which the belting is made. The taxpayer manages the factory, keeps the books, and sells the goods, and for these services makes a charge against the Narragansett Co. The taxpayer does not buy supplies from any other concern, except a special kind of chrome-colored belting.

Prior to organizing the taxpayer, Wilfred C. Murphy was in the mill-supply business for 17 years, working for other concerns. During 1919 and 1920 he was treasurer, traveling salesman, and general manager of the taxpayer. In these years there were four other salesmen. Murphy made 70 per cent of the sales. Without the benefit of Murphy's experience and acquaintances, it would have cost the corporation a considerable sum of money to develop the business. No evidence was offered of the compensation he received from the taxpayer for his services.

At first the taxpayer did an annual business of something over $50,000 on a stock of $10,000, turning over the stock five times. Commencing with the period of the war, they did a business of $700,000, with a stock of approximately $30,000, which was turned over twenty times.

The inventory of leather is carried by the Narragansett Co. and the inventory of belting supplies is carried by the taxpayer.

The gross sales in 1919, less returns and allowances, were $537,861.91, and the net income was $26,838.46.

Other corporations in the same line of business as the Providence Co. are Brown Brothers Co., the Hope Mill Supply Co., and the United States Oil & Supply Co., all of Providence, R. I.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

STERNHAGEN: We find no basis for including in invested capital good will in any amount. There is no evidence that the taxpayer acquired any good will in a legal sense. Neither of these corpora tions acquired any established business or property. The stock was

issued for cash (although at considerably less than par) to the men who formed the corporations, and they transferred no other property to the corporations. The only benefit received by the taxpayer bearing any resemblance to good will was Murphy's services. He had had a long experience and acquaintanceship in selling the articles the taxpayer was engaged in marketing. But he did not have an established business or any assets of a business which were transferred to the taxpayer; he had been employed by others. All this corporation got was his services. Ability, skill, experience, acquaintanceship, or other personal characteristics or qualifications do not constitute good will as an item of property; nor do they exist in such form that they could be the subject of transfer.

It was stated on behalf of the taxpayer that some of the good will came into the corporation when it was formed and some of it came in over a period of several years. The principal stockholder, Murphy, because of his commanding position in this field of business, was permitted to buy shares of stock from time to time at prices ranging from $5 to $90 per share. The difference between the price paid by him and the par value of the shares was treated as an amount paid for good will. Another way of stating this contention is that when Murphy paid the corporation the $7 per share for the first 170 shares issued to him, upon the formation of the corporation, the corporation acquired only a part of the supposed good will, and the balance of it came to the corporation in small parts, each time a sale of stock was made to him over a period of several years. Before we can adopt such an inference there must be clear evidence of the premises, in fact.

If any good will was created in developing the business of the taxpayer, such good will may not be included in the invested capital. Under section 326 (a) (4), Revenue Act of 1918, any good will included in invested capital must have been already in existence as an asset, and must have been acquired and paid for in stock or shares at its actual cash value (but with the limitations expressed in the Act on the amount thereof in relation to the total outstanding stock).

It appears from taxpayer's exhibit No. 1 (Commissioner's letters of April 23, 1923, and February 10, 1925) that some allowance for good will was made in computing invested capital. We do not, however, disturb that finding of the Commissioner because we do not know what evidence may have been before him when it was made.

The taxpayer further claimed the right to special assessment under section 328, but it has not adduced any evidence which would bring it within the provisions of section 327.

ARUNDELL not participating.